IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTOR HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KMART CORPORATION, SEARS, ROEBUCK & COMPANY and SEARS HOLDINGS MANAGEMENT CORPORATION,<br><br>Defendants. | C.A. No. 1:14-cv-185-GMS<br><br>(CONSOLIDATED) |
| INVENTOR HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND INC.,<br><br>Defendant. | C.A. No. 1:14-cv-448-GMS |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Inventor Holdings, LLC*

**TABLE OF CONTENTS**

**Page**


I. NATURE AND STAGE OF PROCEEDINGS ....... 1

II. SUMMARY OF ARGUMENT ....... 1

III. STATEMENT OF FACTS ....... 2

IV. LEGAL STANDARDS ....... 4

A. Rule 12(c) Motion ....... 4

B. Defendant's Clear and Convincing Burden of Proof ....... 5

C. Patentability Under 35 U.S.C. § 101 ....... 6

V. ARGUMENT ....... 8

A. The Claims of the Patents-in-Suit Are Patentable Under the *Alice* Framework ....... 8

B. The Claims of the Patent-In-Suit Are Not Directed to an Abstract Idea ....... 9

C. Even if the '582 Patent Were Deemed to Cover an Abstract Idea, the Claims Satisfy Step Two of *Alice* ....... 14

1. The Claims Cover an Inventive Concept ....... 15

2. The Claims Are More Than a Drafting Effort Designed to Monopolize an Abstract Idea ....... 19

3. The Claims Improve an Existing Technological Process and Supply a New and Useful Application of the Idea ....... 20

VI. CONCLUSION ....... 20

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008) .......... 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) .......... passim

*Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477 (U.S. 1935) .......... 6

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. SACV 11-00189 AG (RNBx), 2014 WL 7012391 (C.D. Cal. Nov. 12, 2014) .......... 12, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Bancorp Servs., LLC v. Sun Life Assur. Co.*, 687 F.3d 1266 (Fed. Cir. 2012) .......... 14, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) .......... 6, 7, 15

*Byrd v. Bates*, 220 F.2d 480 (5th Cir. 1955) .......... 5

*California Inst. of Tech. v. Hughes Communications Inc.*, No. 2:13-cv-007245-MRP-JEM, 2014 WL 5661290 (C.D. Cal. Nov. 3, 2014) .......... passim

*Card Verification Solutions, LLC v. Citigroup Inc.*, 13 C 6339, 2014 WL 4922524 (N.D. Ill. Sep. 29, 2014) .......... 14, 18

*Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991) .......... 6

*Corning v. Burden*, 15 How. (56 U.S.) 252 (1853) .......... 18

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012) .......... 9, 11, 17

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) .......... 18

*Data Distribution Technologies, LLC v. BRER Affiliates, Inc.*, Civil No. 12-4878 (JBS/KMW), 2014 WL 4162765 (D.N.J. Aug. 19, 2014) .......... 14

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) .......... 13, 15

*Diamond v. Diehr*, 450 U.S. 175 (1981) .......... 7, 10, 18, 19

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 5

*Gottschalk v. Benson*, 409 U.S. 63 (1972) ........ 7, 15, 18

*Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478 (Fed. Cir. 1986) ........ 5

*Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, 2014 WL 4796111 (D. Del. Sep. 18, 2014) ........ 13, 15, 17

*Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ........ 5

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ........ 5, 17

*In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) ........ 5

*King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010) ........ 7

*LML Patent Corp. v. JPMorgan Chase & Co.*, 2:08-cv-448 (E.D. Tex. Sept. 20, 2010), D.I. 613 ........ 17

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012) ........ passim

*Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238, 2242 (2011) ........ 5

*Molecular Pathology v. Myriad Genetics*, 133 S. Ct. 2107 (2013) ........ 9

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344 (Fed. Cir. 2001) ........ 6

*Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (1986) ........ 4

*SmartFlash LLC v. Apple, Inc.*, Case No. 6:13-CV-447-JRG-KNM (E.D. Tex. Jan. 21, 2015), D.I. 423, *adopted by SmartFlash LLC v. Apple, Inc.*, Case No. 6:13-CV-447-JRG-KNM (E.D. Tex. Feb. 13, 2015), D.I. 484 ........ 13

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870 (2014) ........ 5

*Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23 ........ 1, 8

*Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13 ........ 1, 8

**Statutes**

35 U.S.C. § 101 ........ passim

35 U.S.C. § 102 ........ 13

35 U.S.C. § 103 .......................................................................................................... 13

35 U.S.C. § 282 .......................................................................................................... 6

**Rules**

FED. R. CIV. P. 12 .......................................................................................................... 4, 13

## I. NATURE AND STAGE OF PROCEEDINGS

On February 12, 2014, April 8, 2014 and June 11, 2014, Plaintiff Inventor Holdings, LLC ("IH") filed Complaints for infringement of U.S. Patent No. 6,381,582, entitled Method And System For Processing Payments For Remotely Purchased Goods" (the "'582 patent"), against Defendants Kmart Corporation; Bed Bath & Beyond Inc.; and Sears Holdings Management Corporation and Sears Holdings Corporation,[1] respectively. On February 6, 2015, Defendants filed their Motion for Judgment on the Pleadings (the "Motion") asserting the '582 patent is invalid under 35 U.S.C. § 101 (C.A. No. 1:14-cv-448-GMS, D.I. 40; C.A. No. 1:14-cv-185, D.I. 48). They filed their Motion after this Court already denied motions to dismiss based on 35 U.S.C. § 101 in related cases. *See Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13; *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23. IH submits this opposition in response to Defendants' Motion.

## II. SUMMARY OF ARGUMENT

1. Accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of IH, Defendants' unsupported assertions do not meet their clear and convincing burden to show that any of the duly issued claims of the '582 patent are not patent eligible under 35 U.S.C. § 101.

2. The claims of the '582 patent are directed to solving the problems described in the background of the patent and provide a unique solution to decrease consumers' risk of having their credit card information stolen when making remote purchases. The claims as properly construed and understood are not abstract under the Supreme Court's analysis in *Alice Corp. v. CLS Bank*.

[1] IH amended its complaint against Sears Holdings Management Corporation and Sears Holdings Corporation to name the current defendants, Sears, Roebuck and Co. and Sears Holdings Management Corporation.

3. Even if the '582 patent were found to implicate an abstract idea, the claims are patent eligible under § 101 because they possess an inventive concept, are more than a drafting effort designed to monopolize an abstract idea, improve an existing technological process, and supply a new and useful application of the idea.

## III. STATEMENT OF FACTS

The '582 patent, filed on September 29, 1997, explained a problem associated with purchasing goods over the Internet:

> On-line systems are known wherein a shopper may connect, for example over the Internet, to an on-line catalog retailer. The customer may purchase goods, and submit payment through an electronic interchange of information, or by telephone or mail. Such systems suffer from the drawbacks of conventional catalog ordering with respect to payment options. That is, a consumer must either provide a credit card to a remote 'stranger', suffer the inconvenience of writing and mailing a check, or deal with the complex electronic payment systems described below.

Exh. A at 3:6-15. In addition, transmitting credit card information over the Internet puts the credit card number at risk of being stolen by a third party. The same is true for transmitting credit card information over the phone or by mail. The inventions described and claimed in the '582 patent solved these problems.

The systems and methods of the '582 patent include a retail system 10 including a remote seller system 12 connected to a local point-of-sale ("POS") system 14 through a remote processor system 16. *Id* at 5:29-31. These systems are interconnected by data links 18, 20 that may be electronic network connections. *Id* at 5:32-33. A buyer system 22 is connected to remote seller system 12 by data link 24, such as an Internet connection. *Id* at 5:35-37.

As described in an embodiment of the '582 patent, retail system 10 enables a customer operating buyer system 22 to make a remote purchase from remote seller system 12, and then pay for that remote purchase through a local POS system 14. *Id* at 5:54-57. Remote processor

system 16 facilitates the transaction by reconciling the payment made by the customer at local POS system 14 with the purchase made by the customer from remote seller system 12. *Id* at 5:58-61.

The POS system 14 is configured to include appropriate data for processing scanned barcodes (or other appropriately entered codes, such as typed in product SKU's) to identify both locally sold goods and remote sellers (such as catalog merchants in an illustrated embodiment). *Id* at 6:64-7:2. Accordingly, the sale of local goods and remote goods may be processed at a single POS register. *Id* at 7:2-6.

To facilitate the customer payment to be made at a local retail store, the catalog merchant selects an appropriate processing merchant (step 220), and transmits the order record information to the remote processing system of same (step 222). *Id* at 10:51-55. This order data is used to populate the appropriate fields of merchant order database 78 (FIG. 3C) (step 224) for subsequent use by the processor merchant. *Id* at 10:55-56.

Upon entry of the code into the local POS system, the code is used with product/field code 66 of inventory database 34 to determine the appropriate record to be processed and the corresponding price field 70 is examined to determine if the code is representative of local goods or a remote seller (steps 232, 234). *Id* at 11:31-37. If the price field returns a "request order code" or similar instruction, then the register operator is informed that the transaction involves a remote seller and further catalog order information is requested. *Id* at 11:39-43.

The remote processor system of the processor merchant receives the catalog merchant code and the order code (step 250) transmitted by the local POS system. Merchant order database 78 (FIG. 3C) is interrogated to determine if the received catalog merchant code and the order code match the contents of any single record, that is if the received codes match the

contents of retailer merchant code 110 and order code 104 for any of records 96-102 (steps 254, 256). *Id* at 11:59-67. If a record is found that matches the received data, then the remote processing system transmits the price from field 106 of the appropriate record of merchant order database 78 back to the local POS system (step 260). *Id* at 12:5-8. A new record with the order information, *i.e*. order code, catalog merchant code, price paid, and date paid, is entered into order database 32 (step 262). The price is then displayed to the customer for payment (step 264). *Id* at 12:5-8.

Upon receipt of the payment, the POS system is programmed to automatically transmit verification of the payment to the remote processing system of the processor merchant (step 272). *Id* at 13:1-5. The remote processor system enters the date of receipt of the verification into the fulfillment date field 114 of merchant order database 78 (step 274) to indicate receipt of the payment verification. *Id* at 13:5-8. The remote processor system then transmits a verification of payment to the catalog merchant's remote seller system (step 276), initiating fulfillment of the order, and the remote seller system updates date paid field 148 of order database 124 (step 278), automatically initiating a fulfillment process culminating in shipping of the goods to the customer (step 280). *Id* at 13:8-16.

## IV. LEGAL STANDARDS

### A. Rule 12(c) Motion

The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as that for deciding a Rule 12(b)(6) motion to dismiss. *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). Thus, courts look at the allegations of the complaint to determine if "enough facts to state a claim to relief that is plausible on its face" are alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Courts also are not to dismiss complaints "unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)).

**B. Defendant's Clear and Convincing Burden of Proof**

As the Supreme Court held, Defendants must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238, 2242 (2011). This burden remains with Defendants, and IH never bears the burden of proving validity. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986); *see also Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008) ("'The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.' . . . This burden '***exists at every stage of the litigation***.'" (emphasis added)). Accordingly, the party challenging validity bears the heavy burden of proving by clear and convincing evidence that the patent is invalid.

While determining whether an asserted claim is invalid for lack of patentable subject matter under 35 U.S.C. § 101 is a question of law, *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) ("*Bilski I*"), the question may involve several factual underpinnings. *See In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (noting that "the legal question as to patentable subject matter may turn on subsidiary factual issues"); *see also Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870 (2014) ("[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues.").

This "clear and convincing" burden of proof must be met independently for each claim because "[e]ach claim carries an independent presumption of validity, 35 U.S.C. § 282, and stands or falls independent of the other claims." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1266-67 (Fed. Cir. 1991) (citing *Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477, 487 (U.S. 1935) ("And each claim must stand or fall, as itself sufficiently defining invention, independently of the others")). Accordingly, it is reversible error to hold ***any claim*** invalid in the absence of clear and convincing evidence specifically directed to that particular claim. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1356 (Fed. Cir. 2001) ("Because dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found").

**C. Patentability Under 35 U.S.C. § 101**

There are only three narrow exceptions to the broad patent-eligibility principles of 35 U.S.C. § 101 – "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) ("*Bilski II*"). The Supreme Court has never provided clear guidance as to what constitutes an "abstract idea." *Id*. at 3236 (Stevens, J., concurring). Indeed, most recently, the Supreme Court ruled it "need not labor to delimit the precise contours of the 'abstract ideas' category" when deciding *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). Further, the Court reiterated its reluctance to broadly apply the exception for laws of nature, natural phenomena, and abstract ideas. "[W]e tread carefully in construing this exclusionary principle, lest it swallow all of patent law. At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 2354 (quoting *Mayo Collaborative Services v. Prometheus Labs., Inc.* 132 S. Ct. 1289, 1293 (2012) (citation omitted). The Federal Circuit held a patent claim should not be found to be

for an unpatentable abstract idea unless that abstractness "exhibit[s] itself ***so manifestly*** as to override the broad statutory categories of eligible subject matter." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010) (emphasis added). Further, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Id.* at 869.

The appropriate analysis of whether a claim satisfies § 101 requires viewing the claim ***as a whole***, *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981), and not individual limitations. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1277 (Fed. Cir. 2010) ("The Supreme Court has stated that a § 101 patentability analysis is directed to the claim as a whole, not individual limitations."). As the Supreme Court explained:

> It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made.

*Diehr*, 450 U.S. at 188.

"[T]he concern that drives" § 101 jurisprudence is "one of pre-emption." *Alice*, 134 S. Ct. at 2354; *see also Bilski II*, 130 S. Ct. at 3231 (finding claims covered ineligible subject matter because they "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."). Claims – even ones directed to abstract ideas – are patentable where the claim (i) contains an "inventive concept," *Alice*, 134 S. Ct. at 2357; (ii) is "more than a drafting effort designed to monopolize" the abstract idea, *id.* at 2358 (quotation omitted); (iii) "improve[s] an existing technological process," *id.*; or (iv) supplies a "'new and useful application' of the idea." *Id.* at 2357 (quoting *Benson*, 409 U.S. at 67).

## V. ARGUMENT

### A. The Claims of the Patents-in-Suit Are Patentable Under the *Alice* Framework

As an initial matter, the Court has previously denied motions to dismiss in related cases which alleged the '582 patent fails § 101. *See Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13; *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23. As those motions relied on *Mayo*, *see Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 8 (incorporating by reference *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 12); *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 12, and *Alice* (relied on by the Defendants here) reiterates the two-part *Mayo* test, the present Motion gives no rise for the Court to revisit, let alone reverse, its prior decision declining to hold the '582 patent ineligible.

Indeed, *Alice* only confirms this result. The Supreme Court in *Alice* emphasized the fine line that must be walked in assessing whether to apply § 101's narrow exceptions to patentable subject matter. *See Alice*, 134 S. Ct. at 2354 ("[W]e tread carefully in construing this exclusionary principle lest is swallow all of patent law"). The narrow holding in *Alice* has provided little clarity apart from the definitive application of *Mayo*'s two-step inquiry to potential abstract ideas, and courts applying *Alice* have struggled to uniformly apply its limited guidance. *See, e.g.*, *California Inst. of Tech. v. Hughes Communications Inc.*, No. 2:13-cv-007245-MRP-JEM, 2014 WL 5661290 at *8 (C.D. Cal. Nov. 3, 2014) ("In order to best incentivize innovation . . . patent law must be predictable, consistent, and uniform. *Alice* does not achieve this goal, leaving the boundaries of § 101 undefined." (citation omitted)).

When the facts are viewed, as they must be on a Rule 12 motion, in the light most favorable to IH, there are meaningful limitations that preclude the '582 patent from

impermissibly preempting "the basic tools of scientific and technological work" and "thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354 (quoting *Association for Molecular Pathology v. Myriad Genetics*, 133 S. Ct. 2107, 2116 (2013)). Defendants present no evidence that the properly construed claims of the '582 patent would pre-empt the field and grant IH a monopoly over an abstract idea. In fact, the prior art cited in the '582 patent remains available for practice by Defendants.

Nevertheless, Defendants attempt to avoid liability by short-circuiting the trial process by diving headlong into § 101. However, when properly applying the *Alice* test, the claims of the '582 are patent eligible under § 101.

**B. The Claims of the Patent-In-Suit Are Not Directed to an Abstract Idea**

First, the Court must "determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. 2347, 2355 (2014). "At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 2354 (quoting *Mayo*, 132 S. Ct. at 1293). Nothing in *Alice* states a patent's claims are to be overly simplified when determining patent eligibility under § 101, and despite this caution from the Supreme Court, Defendants ask this Court to simplify, generalize, or ignore the concrete limitations of the claims to such a degree that predictably only an abstract idea remains. Even prior to the Supreme Court's guidance in *Alice*, this Court warned against doing precisely what Defendants now ask it to do:

> ***It is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception to patent eligibility under 35 U.S.C. § 101.*** Patent eligibility must be evaluated based on what the claims recite, not merely on the ideas upon which they are premised.

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 716 (D. Del. 2012) (emphasis added).

Here, Defendants variously mischaracterize the '582 patent as claiming the "abstract idea" of "paying for a remote purchase at a local retailer" (C.A. 1:14-cv-185-GMS, D.I. 49 at 1, 2; C.A. 1:14-cv-448, D.I. 41 at 1, 2)[2]; "[p]aying for goods purchased from a remote seller at a local point-of-sale retailer" (Opening at 10); and "paying for a purchase made from a remote seller at a local point-of-sale store" (*id.*). In their discussion of claims 8, 25 and 41 of the '582 patent, Defendants do not view the claims as a whole, but rather choose to focus on actions in the claim limitations that Defendants then characterize as those that "can be performed entirely through verbal communication between individuals or use of already established conventional systems."[3] (*Id.* at 12.) Defendants also incorrectly assert that the claimed technology "can be performed just as easily by humans using paper."[4,5] (*Id.* at 15). Defendants' varying assertions of the existence of an underlying abstract idea by coloring the claims using "overly simplistic generalities" do

[2] Defendants' Opening Briefs filed as C.A. 1:14-cv-185-GMS, D.I. 49 and C.A. 1:14-cv-448, D.I. 41 are identical and are collectively referred to herein as "Opening."

[3] Defendants' arguments seeking invalidity based on any alleged use of "conventional systems" is in direct opposition to the Supreme Court's ruling in *Diehr* that "a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." 450 U.S. at 188.

[4] Arguments that claim elements could be characterized as "'mental steps [that] can be performed by a person with pencil and paper'" – arguments, which are replete in Defendants' motion – "deserve[] special attention" because "this mode of analysis [is] unhelpful for computer inventions. Many inventions could be theorized with pencil and paper, but pencil and paper can rarely produce the actual effect of the invention." *California Inst. of Tech. v. Hughes Communications Inc.*, No. 2:13-cv-007245-MRP-JEM, 2014 WL 5661290 at *11 (C.D. Cal. Nov. 3, 2014); *see also id.* at *16 n.19 ("It is as fruitless to say that a human could use pencil and paper to perform the same calculations as a computer, as it is to say that a human could use pencil and paper to write down the chemical structure of a DNA strand. In either case, any effort on the part of a human will only be a symbolic representation. The effort will not produce the same effect as executing a computer program or isolating a DNA strand.").

[5] The claims of the '582 patent – when properly construed – cannot be performed by the human mind alone or by a human aided by a pen and his or her voice as alleged by Defendants. (Opening at 17 ("A person could accomplish each of these steps manually by writing down a product identifier and price and verbally communicating that information to a local seller.").) A human, unassisted by the invention of the '582 patent, cannot store codes in a database and electronically apply those codes to remote or local orders entered in a POS system. For this additional reason, the claims of the '582 patent are not abstract ideas.

exactly what this Court proscribed in *CyberFone*.

The Supreme Court and Federal Circuit confirmed software is patentable. *See Alice*, 134 S. Ct. at 2354 ("[W]e tread carefully in construing this exclusionary principle, lest it swallow all of patent law. At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" (quoting *Mayo Collaborative Services v. Prometheus Labs.*, Inc. 132 S. Ct. 1289, 1293 (2012) (citation omitted))); *Ultramercial*, 2014 WL 5904902 at *4 ("[W]e do not purport to state that all claims in all software-based patents will necessarily be directed to an abstract idea.") Nevertheless, Defendants' mode of analysis – ignoring claim elements and then substituting a human being aided by a pen or pencil – not only is suspect, but also would result in many, if not most, software inventions being invalid under § 101. *See California Inst. of Tech.*, 2014 WL 5661290 at *16 ("The problems of pencil-and-paper analysis are heightened in the context of software, which necessarily uses algorithms to achieve its goals. Pencil-and-paper analysis can mislead courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer. . . . The pencil-and-paper test is a stand-in for another concern: that humans engaged in the same activity long before the invention of computers . . . In the case at hand, it is clear that Caltech's error correction codes were not conventional activity that humans engaged in before computers, and the codes do not become conventional simply because humans can do math. Pencil-and-paper analysis is inappropriate at least for this area of technology.) (citations omitted).

Defendants simply ignore the express limitations in the claims themselves in an attempt to make the claims of the '582 patent appear impermissibly broad. When examining the claims as a whole, the '582 patent is directed to solving the problems articulated in the background of

the patent and providing a unique solution to protect a person from having his or her credit card information stolen when making a remote purchase online, by telephone or by mail. "After determining the claim's purpose, the court then asks whether this purpose is abstract. Age-old ideas are likely abstract, in addition to basic tools of research and development, like natural laws and fundamental mathematical relationships." *California Inst. of Tech.*, 2014 WL 5661290 at *13.

Properly understood, the claimed technology necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions. Defendants' arguments that "humans can replace the 'technical' components of the claims" are unfounded. (Opening at 15.) "[W]e must be wary of facile arguments that a patent preempts all applications of an idea. It may often be easier for an infringer to argue that a patent fails § 101 than to figure out a different way to implement an idea . . . ." *McRO, Inc. v. Sega of America, Inc.*, No. 2:12-cv-10327, 2014 WL 4746901 at *7 (C.D. Cal. Sept. 22, 2014); *see also Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. SACV 11-00189 AG (RNBx), 2014 WL 7012391 at *5 (C.D. Cal. Nov. 12, 2014) ("Defendant ignores that the claims do not purport to cover the game of poker itself: they require nothing about cards, bets, or the mechanics of play. While it might be undisputed that people have hosted and watched poker games for as long as they have been played, that does not establish that the type of monitoring and player management required by the claims is an idea of similarly hoary provenance."). The fact that the inventions of the '582 patent were developed to overcome deficiencies in conventional remote sales systems belies Defendants' assertion that they comprise an "automat[ion of] what was previously done manually." (Opening at 16 (quotation omitted).)

The claimed system improves upon prior art systems that either addressed only individual phases of the sales process or failed to fully recognize the insecurity consumers had when

providing their credit card account numbers to "strangers" online or over the telephone. The claims address a business challenge particular to remote sales, especially via the Internet, and provide protection for credit card account numbers. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("Although the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet."); *see also SmartFlash LLC v. Apple, Inc.*, Case No. 6:13-CV-447-JRG-KNM (E.D. Tex. Jan. 21, 2015), D.I. 423 at 20-21 (finding claims that "solve problems faced by digital content providers in the Internet Era and 'improve the functioning of the computer itself' by providing protection for proprietary digital content" patent eligible under § 101."), *adopted by SmartFlash LLC v. Apple, Inc.*, Case No. 6:13-CV-447-JRG-KNM (E.D. Tex. Feb. 13, 2015), D.I. 484 (attached as Exh. C.).

Similar to the claims in *DDR*, the claims of the '582 patent

> do not recite an invention as technologically complex as an improved, particularized method of digital data compression. But nor do they recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations, such as the claims in *Alice*, *Ultramercial*, *buySAFE*, *Accenture*, and *Bancorp*. The claimed [technology], though used by businesses, is patent-eligible under § 101.

*DDR*, 773 F.3d at 1259.

In order to invalidate a duly issued patent under § 101 before claim construction, Defendants must prove their case with more than their presumptions about the meaning of the patent.[6] *See Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, 2014 WL 4796111 at *17 (D. Del. Sep. 18, 2014) (denying the defendant's motion to dismiss and ruling

[6] The Court is not required to accept Defendants' factual allegations as true on a Rule 12(c) motion. At most, Defendants have raised disputed material fact issues. If Defendants present clear and convincing evidence that the '582 patent merely encompasses prior art via "generic" or "conventional" components as alleged, then such evidence is properly weighed against the requirements of §§ 102 and 103, but granting a motion to dismiss under § 101 at this stage of the proceeding based only on Defendants' *ipse dixit* assertions is unwarranted.

the defendant did not present evidence "to show that these ideas are fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work."); *see also Data Distribution Technologies, LLC v. BRER Affiliates, Inc.*, Civil No. 12-4878 (JBS/KMW), 2014 WL 4162765 (D.N.J. Aug. 19, 2014) (denying defendants' § 101 motion to dismiss despite arguments regarding the abstract nature of the claimed invention because, while not required, waiting to conduct claim construction is advisable and ruling "[t]he Federal Circuit has cautioned that 'it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.'" (quoting *Bancorp*, 687 F.3d at 1273-74).

Moreover, the grant of a § 101 challenge at the pleadings stage is the exception, not the rule "'because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary.' Thus, dismissal is appropriate ***solely*** when the ***only*** plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Card Verification Solutions, LLC v. Citigroup Inc.*, 13 C 6339, 2014 WL 4922524 at *2 (N.D. Ill. Sep. 29, 2014) (quoting *Ultramercial*, 722 F.3d at 1338-39). Accordingly, Defendants have not carried their burden and their Motion must be denied.

### C. Even if the '582 Patent Were Deemed to Cover an Abstract Idea, the Claims Satisfy Step Two of *Alice*

Step two of *Alice* requires the Court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application. *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297). This second step involves four considerations: Claims directed to abstract ideas are patentable where the claim (1) contains an "inventive concept," *id.*

at 2357; (2) is "more than a drafting effort designed to monopolize" the abstract idea, *id.* at 2358 (quotation omitted); (3) "improve[s] an existing technological process," *id.*; ***or*** (4) supplies a "'new and useful application' of the idea." *Id.* at 2357 (quoting *Benson*, 409 U.S. at 67) (emphasis added). Thus, if any one of the four factors is satisfied in the second step of *Alice*, the claim is patent-eligible under § 101.[7]

**1. The Claims Cover an Inventive Concept**

The claims at issue here align with those the Federal Circuit found to contain an inventive concept in *DDR*. There, as here, the claims "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform in on the Internet. Instead, the claimed solution is necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257. In particular, the '582 patent's claims address the problem of providing consumers a way to pay locally for remotely purchased goods. The solution – the use and processing of codes and communication between local and remote systems – is necessarily rooted in computer technology. It allows the consumer to avoid transmitting credit card information over the Internet and even allows consumers without credit cards to make purchases over the Internet by paying cash locally.

The claims also satisfy the machine-or-transformation ("MOT") test, another "useful and important clue" for determining eligibility. *Bilski II*, 130 S. Ct. at 3227. If the claims satisfy the test, the Court can find them patent eligible. *See Helios*, 2014 WL 4796111 at *17 ("Even if the asserted claims were drawn to abstract ideas, the claims would remain patentable because they satisfy the machine-or-transformation test.").

The claims of the '582 patent satisfy the first prong of the MOT test, making them patent

[7] Defendants failed to examine all four factors of step two of *Alice*.

eligible subject matter under § 101.[8] Properly construed and understood, each of the '582 patent claims requires a computer programmed to perform the specific claimed functions. The specification teaches that this computer is not merely an insignificant appendage, or used simply to speed up or automate operations. Rather, the computer is at the very heart of the claimed inventions.

Without the computer, the objectives and advantages that the patent states for the invention would not be achieved. The '582 patent claims a novel and non-obvious computerized method and apparatus for remote sellers to process payments for the sale of goods. A central feature of the invention is the POS system. The specification of the '582 patent states:

> Referring now to FIG. 1, a retail system 10 is shown including a remote seller system 12 connected to a local point-of-sale (POS) system 14 through a remote processor system 16. These systems are suitably interconnected by data links 18, 20, comprising for example telephone connections or electronic network connections. A buyer system 22 is connected to remote seller system 12 by a suitable data link 24. In the present embodiment data link 24 comprises an Internet connection, for example a conventional world-wide-web browser, established through a telephone line. A plurality of point-of-sale (POS) terminals 26A, 26B, 26n are connected to local POS system 14, for example through a conventional computer data network.

Exh. A at 8:28-40. The POS system, along with its processing and transmission of transaction-related information, is specifically claimed in the patent.

The benefits of the claimed inventions are made possible by the use of the expressly disclosed computer system, which implements the claimed steps and elements. Defendants' argument that the '582 patent seeks to preempt the idea of "paying for a remote purchase at a local retail store" bears no weight. (D.I 41 at 2.) When the '582 patent claims are properly construed from the vantage point of a person of ordinary skill in the art in light of the relevant intrinsic evidence, it is evident that the claims require a computer processor to perform the

[8] Defendants misapply this test by ignoring or oversimplifying important claim language.

claimed steps.

Because the claims inherently recite a computer programmed with software configured to receive a code and obtain context information from external sources to enable the completion of a remote sale through a local register, the machine prong is satisfied. *See Helios*, 2014 WL 4796111 at *17 (holding that even if the patents-in-suit claimed abstract ideas, the claims are not drawn to patent-ineligible subject matter because they satisfy the machine prong of the machine-or-transformation test – the use of a computer "'play[ed] a significant part in permitting the claimed method to be performed'" and the asserted claims necessitated the use of a computer.); *see also LML Patent Corp. v. JPMorgan Chase & Co.*, 2:08-cv-448 (E.D. Tex. Sept. 20, 2010), D.I. 613 at 15 (holding "the machine prong is satisfied because [the claim] recites a terminal, a computer system, and a database configured to carry out the consumer bank account status search and enable electronic funds transfer communication" (quotation marks omitted) (attached as Exh. B).). Similar to the *LML* case, the '582 patent claims a local POS system (terminal), a remote processing system (computer system) and a complex set of interconnected databases (database) that use a code to search for and pay for remotely ordered goods complete an automatic fulfillment of customer's purchase.

The '582 patent claims also satisfy the transformation prong of the MOT test. The transformation prong of the MOT test is met where the claims "transform[] an article into a different state or thing." *Bilski I*, 545 F.3d at 962. As *CyberFone*, a case relied on by Defendant, notes, the transformation prong may be met by transforming data into "representations" of "physically existing objects." *CyberFone*, 885 F. Supp. 2d at 717 (citing *Bancorp Servs., LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)). The Federal Circuit has found that the transformation of pixels from one kind of image to another will satisfy the transformation

prong. *See Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011) (describing *Research Corp.* and noting that "[b]ecause the method required the manipulation of computer data structures (e.g., the pixels of a digital image and a two dimensional array known as a mask) and the output of a ***modified computer data structure*** (a halftoned digital image), the method could not, as a practical matter, be performed entirely in a human's mind" and met the transformation prong.) (emphasis added)).

Distinct sets of information, namely order information, codes associated with ordered goods, local and remote seller information, and pricing and payment information, are transformed into a request for shipping goods from the remote seller. *See Card Verification Solutions*, 2014 WL 4922524 at *3-*5 (denying defendant's Rule 12(b)(6) motion based on a § 101 challenge and ruling although the asserted claims were "drawn to the abstract idea of verifying a transaction," because a plausible reading of the claims met the transformation prong of the machine-or-transformation test – "[T]he claimed invention goes beyond manipulating, reorganizing or collecting data by actually adding a new subset of numbers or characters to the data, thereby fundamentally altering the original confidential information."). In addition, claim 1's and 8's "determining," "generating" and "transmitting" steps, claim 25's "generating," "transmitting," "confirming" and "providing" steps, claim 41's "transmitting," "receiving" and "providing" steps further take the claims beyond an abstract idea and into an actual practical application, regardless of whether these and other particular steps of the claim were themselves well-known. *See Diehr*, 450 U.S. at 188-90. These claims, and the claims dependent thereon, accordingly amount to more than a mere passing-through of information and are "sufficiently definite to confine the patent monopoly within rather definite bounds." *Benson*, 409 U.S. at 69 (discussing *Corning v. Burden*, 15 How. (56 U.S.) 252 (1853)). The transformation prong of the

MOT test is satisfied.

Defendants ignore these facts in their deficient analysis of step two of *Alice*. *See Ameranth*, 2014 WL 7012391 at *6 (denying motion for summary judgment of invalidity under § 101 and ruling "[b]ut automation of manual tasks is not necessarily abstract. U.S. Patent No. 72 (1794) to Eli Whitney for a cotton gin is one familiar example of a solidly tangible automating machine. '").

In addition to requiring complex programming, in each of these elements the claims are also tied to a computer in a specific way and the computer "plays a significant part in permitting the [claims of the 'patents-in-suit] to be performed," therefore, the claims meet the machine prong of the machine-or-transformation test and are patent eligible.[9]

**2. The Claims Are More Than a Drafting Effort Designed to Monopolize an Abstract Idea**

The Supreme Court stated, "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Alice*, 134 S. Ct. at 2358. As discussed above, the claims of the '582 patent require complex programming tied to a computer is a specific way and the computer plays a significant part in permitting the claims to be performed. Accordingly, the claims are more than a drafting effort designed to monopolize a purportedly abstract idea.

---

[9] Recently, in *California Inst. of Tech.*, 2014 WL 5661290, the district court held that Cal. Tech.'s claimed method of encoding and decoding data aimed at reducing errors in digital data transmission were patentable under step two of *Alice*. In step one the court found that the claims were directed to the abstract idea of "encoding and decoding data for the purpose of achieving error correction." *Id.* at *14. Applying step two, the court found "inventive concepts" in the "irregular repetition of bits and the use of linear transform operations" sufficient to transform the use of the abstract idea into patentable subject matter. *Id.* at *15. In finding an "inventive concept" in the claim as a whole, the Court adhered to the Supreme Court's guidance from *Diehr* that "'the "novelty" of any element or steps in a process . . . is of no relevance' in § 101 analysis." *Id.* at *4 (quoting *Diehr*, 450 U.S. at 188-89).

The Court should be wary of Defendants' arguments to the contrary because "[i]t may often be easier for an infringer to argue that a patent fails § 101 than to figure out a different way to implement an idea . . . ." *McRO*, 2014 WL 4746901 at *7.[10] Defendants fail to acknowledge that the claims of the '528 patent do not cover every conceivable manner which a person can make a remote purchase and pay for it locally and therefore cannot cover the entire field. Indeed, Defendants have each raised a defense of noninfringment, fatally undercutting any argument that the claims preempt use of even the accused systems, let alone all ways of paying locally for remote purchases. Accordingly, Defendants have not met their heavy burden of proving invalidity by clear and convincing evidence.

### 3. The Claims Improve an Existing Technological Process and Supply a New and Useful Application of the Idea

If the claims of the '582 patent did not improve upon the state of the art at the relevant time or did not supply a new and useful application of the idea, the USPTO would not have allowed them and the patent would not have issued. The USPTO considered dozens of prior art references and found the claims of the patents-in-suit novel, not anticipated and not obvious. The inventions claimed in the '582 patent have specific applications, improve the technologies in the marketplace and therefore, are patentable subject matter. *See Research Corp.*, 627 F.3d at 86 (ruling "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act.").

## VI. CONCLUSION

For the foregoing reasons, the Court should not change its previous denial of motions to dismiss on the same patent and Defendants' Motion should be denied.

[10]The fact that the inventions of the '582 patent were developed to overcome deficiencies in the prior art belies Defendants' contention that they comprise conventional activity.

Dated: February 20, 2015

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Inventor Holdings, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2015, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080